**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **FIRST BANCORP and** | ) | |
| **FIRSTBANK PUERTO RICO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2016-0060** |
| | ) | |
| **CARL F. CHRISTOPHER a/k/a** | ) | |
| **Asarkasaamsu Raasar Ra II Karapernuntu** | ) | |
| **Herishet Apaheru a/k/a Asarkasaamsu R.R.II** | ) | |
| **K. Herishetapaheru a/k/a Nsw Setep N Ra Neb Ka** | ) | |
| **Ra Herishetapaheru Neb Aha Asarkaamsu** | ) | |
| **Raasar Ra II KaraPernuntu Herishetapaheru** | ) | |
| **a/k/a Nesut Ra Setep N Ra Neb Ka Ra** | ) | |
| **Herishetapaheru Neb Aha a/k/a Nesut Sa Ra** | ) | |
| **Setep N Ra Neb Ka Ra Herishetapaheru Neb Aha** | ) | |
| **a/k/a Asarkasaamsu' Raasar' Ra II** | ) | |
| **KaraPernuntu Herishetapaheru a/k/a** | ) | |
| **Asarkasaamsu Raasar II KaraPernuntu** | ) | |
| **Herishetapaheru; and** | ) | |
| **CHENZIRA D. KAHINA,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Appearances:**
**Warren B. Cole, Esq.,**
**Elise Catera, Esq.,**
St. Croix, U.S.V.I.
      *For Plaintiffs*

**Carl F. Christopher,** *Pro Se*
**Chenzira D. Kahina,** *Pro Se*


<u>**MEMORANDUM OPINION**</u>

**Lewis, Chief Judge**

        THIS MATTER comes before the Court on "Plaintiffs' Motion for Preliminary Injunction"

(the "Motion"), filed by First Bancorp. and Firstbank Puerto Rico ("Plaintiffs")[1] (Dkt. No. 3) and

---

[1] FirstBank Puerto Rico is a wholly owned subsidiary of First BanCorp. (Dkt. No. 1 ¶ 3).

Plaintiffs' "Motion for Entry of Preliminary Injunction." (Dkt. No. 25).[2] In their Motion, Plaintiffs seek a preliminary injunction ordering Carl F. Christopher[3] and Chenzira D. Kahina ("Defendants") to: (1) disclose to the Court the legal description of any property of Plaintiffs or persons associated with Plaintiffs, against which Defendants have filed or recorded notices or any other documents in any public registry, and a description of all documents so filed or recorded; and (2) provide copies of all notices or documents that Defendants have filed or recorded in any public registry which purport to create or document any claim of debt or lien against Plaintiffs or persons associated with Plaintiffs. (Dkt. No. 3 at 2). They also ask that Defendants be preliminarily enjoined from filing or recording any liens or encumbrances in any public records purporting to create or constitute a debt or encumbrance against the property of Plaintiffs or any officer or person associated with Plaintiffs, without first obtaining permission from the Court. *Id.*

Defendants, appearing *pro se*, sought an extension of time to answer the "pleadings." (Dkt. No. 17). The Court granted the motion and ordered them to respond to the Complaint and Motion. (Dkt. No. 19). Defendants timely filed a document, which was docketed as a Motion to Dismiss (Dkt. No. 22), and subsequently filed a "Notice of Leave to Exercise Defenders Right to Amend Motion to Dismiss with Prejudice with Supportive Affidavits of Dkt. 22 Dated November 04, 2016," which the Court construes as an Amended Motion to Dismiss. (Dkt. No. 27).

For the reasons that follow, the Court will grant Plaintiffs' Motion for a Preliminary Injunction; deny as moot Plaintiffs' Motion for Entry of Preliminary Injunction; and deny Defendants' Motion to Dismiss and Amended Motion to Dismiss.

---

[2] In the Motion for Entry of a Preliminary Injunction, Plaintiffs assert that Defendants have failed to oppose the Motion for Preliminary Injunction. They therefore request that the Court enter a preliminary injunction and schedule a hearing for a permanent injunction against Defendants. (Dkt. No. 25).

[3] Defendant Christopher has obtained a change of name (as reflected in the "also known as" portion of the caption in this case). The Court will refer to him as Defendant Christopher.

# I.   PROCEDURAL BACKGROUND

On September 6, 2016, Plaintiffs filed a Complaint against Defendants seeking to quiet title to real property in the U.S. Virgin Islands, and for a declaratory judgment and injunctive relief. (Dkt. No. 1). Plaintiffs assert that, on February 27, 2015, they obtained a judgment for debt against Christopher and foreclosure of mortgage in this Court against both Defendants. (*Firstbank v. Christopher*, Case. No. 1:13-cv-0093). The real property that was the subject of the mortgage, located in Estate Whim (the "Foreclosed Property"), was sold to FirstBank at a Marshal's Sale, and the sale was confirmed by Court Order. *Id.* ¶ 6. A Marshal's Certificate of Sale was recorded, the statutory period of redemption elapsed, and a Marshal's Deed in favor of FirstBank was recorded in July 2016. *Id.* ¶¶ 6, 7.

The Complaint further provides that FirstBank owns commercial real property on St. Croix, including Plot No. 4 of Parcel 3 in Estate Orange Grove; Parcels No. 12 and 13 of King Street, Christiansted; and Parcel No. 14, Christiansted Town (the "Owned Commercial Property"). *Id*. ¶ 8. Plaintiffs allege that, on April 21, 2016, Defendants recorded in the public Records of the Recorder of Deeds, Office of the Lt. Governor, a 53-page document entitled "Affidavit Cover Letter" purporting to be, *inter alia*, "an irrevocable power of attorney appointing Defendants as agents of FirstBank to execute documents on its behalf," and "vest[ing] title to the Foreclosed Property in Defendants." *Id.* ¶ 9. Since the document was recorded against the Foreclosed Property, Plaintiffs contend that it constitutes a cloud upon the title of that property. *Id.*

The Complaint states that, on May 3, 2016, Defendants recorded in the public Records of the Recorder of Deeds, Office of the Lt. Governor, a 67-page document entitled "Affidavit of POA with Security Interest Instruments," purporting, *inter alia*, "(a) to be an irrevocable power of attorney appointing Defendants as agents of Plaintiffs to execute documents on their behalf; (b) to declare Plaintiffs indebted to Defendants in the amount of $190,000,000.00; and (c) to declare

such indebtedness to be a lien against the property of Plaintiffs." *Id.* ¶ 10. This document is recorded against both the Foreclosed Property and the Owned Commercial Property and, according to Plaintiffs, constitutes a cloud on the title of their properties. *Id.*

Plaintiffs allege that, also on May 3, 2016, Defendants recorded in the public Records of the Office of Corporations, Office of the Lt. Governor, a UCC-1 financing statement attaching a 50-page document purporting, *inter alia*, "(a) to be an irrevocable power of attorney appointing Defendants as agents of Plaintiffs to execute documents on their behalf; (b) to declare Plaintiffs indebted to Defendants in the amount of $190,000,000.00; and (c) to declare such indebtedness to be a lien against the property of Plaintiffs." *Id*. ¶ 11. Plaintiffs aver that this document is recorded against the names of both Plaintiffs (First Bancorp. and FirstBank Puerto Rico), and is "a cloud upon the ownership and title of all property of the Plaintiffs wherever located." *Id.*

Plaintiffs allege that Defendants knew these recorded documents to be false instruments when they submitted them to the Recorder of Deeds and to the Corporations Division for recording and filing in the public records. *Id.* ¶ 12. They add that Defendants filed an action in this Court, *Asarkasaamsu v. FirstBank Puerto Rico*, Case No. 1:16-cv-0057, against FirstBank and its Chief Executive Officer (the "Mixed Action Claim"), in which Defendants threatened to record "other false documents against the property of Plaintiffs and 'the residential properties of other potential defendants'" which—according to Plaintiffs—pose a "continuing threat" to the property rights of Plaintiffs and perhaps to other persons with whom Plaintiffs are associated (such as their officers, employees and agents). *Id.* ¶¶ 13, 14.[4]

---

[4] Christopher attached to his original Complaint in the Mixed Action Claim an Affidavit which, *inter alia*, listed the lis pendens that he had filed against Plaintiffs' real property (Dkt. No. 1-2 at 15 in 2016-cv-0057), and stated that the list "is subject to change to also include the residential properties of other potential defendants." *Id*. at 16. Christopher amended his Complaint in the Mixed Action Claim in November 2017. (Dkt. No. 90-1). The Amended Complaint does not contain as an attachment the aforementioned Affidavit with the reference to the filing of the lis pendens and the reference to the properties of other potential defendants. In any event, the lis

Plaintiffs are concerned that Defendants may have "caused other false documents to be recorded in the public records of the Virgin Islands, or of other jurisdictions, of which Plaintiffs are presently unaware." *Id.* ¶ 15. They assert that Plaintiffs are not indebted to Defendants nor is any of their property subject to any lien in favor of Defendants; that Defendants' actions have created a cloud on the title of the Foreclosed Property, the Owned Commercial Property, and all of Plaintiffs' personal property, rendering record title to the Foreclosed Property and Owned Commercial Property unmerchantable; and that Defendants' actions have been taken with malice and with the intent to unlawfully cause harm to Plaintiffs. *Id.* at ¶¶ 16-18.

Plaintiffs conclude that they have no adequate remedy at law, and seek a judgment declaring: that Plaintiffs are not indebted to Defendants in any amount; that no property of Plaintiffs is subject to any claim or lien in favor of Defendants; that the documents Defendants filed on April 21 and May 3, 2016 are void *ab initio* and are expunged from those records; and that title to the Foreclosed Property and the Owned Commercial Property is quieted in favor of FirstBank. *Id.* at 5. Plaintiffs also seek an Order requiring that Defendants disclose to the Court, under oath, the description of any other property of Plaintiffs, or of persons associated with Plaintiffs, against whom Defendants have recorded notices of any kind in any public registry; the names of all persons associated with Plaintiffs, if any, against whom Defendants have filed or recorded notices of any kind in any public registry; and a description of all documents so filed and identifying information. *Id.* In addition, Plaintiffs request that Defendants be ordered to provide, under oath, copies of all documents that Defendants have filed or recorded in any public registry that purport to create or document any claim of debt or lien against Plaintiffs and persons associated with Plaintiffs, and that Defendants be temporarily, preliminarily, and permanently

---

pendens already filed against Plaintiffs' property remain extant, regardless of whether Christopher intends to add incumbrances on property of others associated with Plaintiffs.

enjoined from filing or recording any liens, claims or documents of any description in any public records that purport to create or constitute a debt or lien against the property of Plaintiffs or the property of any person associated with Plaintiffs, without having first obtained permission of the Court. *Id*. at 6.

The day after Plaintiffs filed their Complaint, they filed their Motion for Preliminary Injunction which repeats the factual allegations set forth in the Complaint and their various requests for injunctive relief. (Dkt. No. 3). In setting the context for their Motion, they assert that Defendants have filed at least three false documents in the public records, recorded against their property and assets, and describe these documents as

> largely incoherent and follow[ing] a pattern of draftsmanship derived from what is described in federal case law as the 'Sovereign Citizen' movement, a loose association of individuals who subscribe to the notion that the federal and state governments are operating outside their jurisdiction and do not recognize the authority of federal, state, or local governments and their courts. 'Sovereign Citizens' often create fictitious financial instruments and other false documents, recording them in the public records in retaliation against persons who are simply exercising legal rights or doing their jobs.

*Id*. at 3.

Plaintiffs argue that the four factors required to grant a preliminary injunction have been met. With regard to the probability of success on the merits, Plaintiffs assert that this Court has already ruled in *FirstBank v. Christopher* that Defendants' "outrageous claims against Plaintiffs"—such as claims for entry of default, grants of powers of attorney, and consents for judgments in their favor against FirstBank—which are "more or less based on the same theories as the false documents filed and recorded in this case" are without merit. *Id*. at 7-8. As to irreparable harm, Plaintiffs contend that Defendants have filed false documents in public records against them and have threatened to do so against the "residential properties of other potential defendants," which they interpret as a threat to file additional fictitious claims against residential property owned by individuals associated with Plaintiffs. *Id.* at 9. Without interim relief, they

anticipate that they will be "playing a perpetual game of catch-up" in discovering new documents that were filed and seeking new orders removing them from the public records. *Id.*

In this regard, Plaintiffs provided a Declaration by John Lewis ("Lewis"), FirstBank Vice President of General Services and Specialized Asset Management. (Dkt. No. 3-7). Lewis avers that FirstBank acquires real estate in full or partial satisfaction of a debt, and that was the circumstance under which the Bank acquired Christopher's former property in Estate Whim pursuant to a foreclosure action. *Id.* at ¶ 3. He adds that, under relevant banking regulations, FirstBank is required to prudently and expeditiously market and dispose of such properties. However, he has become aware that Defendants have recorded documents in the public record that constitute a cloud on the title to real property owned by FirstBank, including the Estate Whim property, which renders the property uninsurable and precludes sale. *Id.* ¶¶ 4, 5. Lewis posits that if similar documents are recorded against other real property owned by FirstBank, it would preclude the bank from marketing and disposing of such property until title is cleared. *Id.* ¶ 6. Lewis states that quieting title is a costly process, exposing the Bank to risks of loss, depriving it of the opportunity to acquire performing assets, and affecting its compliance with regulations. *Id.* Finally, he avers that he has made "diligent inquiry" and determined that neither Plaintiff is indebted to the Defendants and that neither Plaintiff has granted any property liens in favor of Defendants. *Id.* ¶ 7.

Plaintiffs also provided a Declaration of Krystal Phillip ("Phillip"), a legal assistant in the offices of Hunter & Cole, the law firm representing Plaintiffs in this action. (Dkt. No. 3-6). Phillip states that she searched the public records in the Recorder of Deeds and Corporations Offices, located in the Office of the Lieutenant Governor, and found: (1) an "Affidavit Cover Letter," signed by Christopher and filed against the Foreclosed Property, with 53 pages of attachments; (2) an "Affidavit of Authenticated Irrevocable Power of Attorney" ("Affidavit of POA"), signed by

Christopher, and filed against the Foreclosed Property and the Commercially Owned Property, with 67 pages of attachments; and (3) a UCC Financing Statement, signed by Christopher, and naming First BanCorp and FirstBank as debtors, with 50 pages of attachments. *Id.*

The Motion for Preliminary Injunction contains copies of these three documents signed by Christopher and their attachments. (Dkt. Nos. 3-3, 3-4, 3-5). The Affidavit Cover Letter asks the Recorder of Deeds to record three attached documents that Christopher had filed in the *FirstBank v. Christopher* debt and foreclosure case that purport to provide Christopher, *inter alia*, with an Unlimited Power of Attorney over FirstBank based on an unintelligible default argument focusing on "QWR RESPA-TILA-REGULATION Z" that he claims gives him rights in the Foreclosed Property. (Dkt. No. 3-3). He also claims that FirstBank committed fraud and misrepresentation, and breached its fiduciary duty in that action. *Id.* The Affidavit of POA purports to give Defendants an Irrevocable Power of Attorney on behalf of "Debtors First Bancorp and FirstBank Puerto Rico," who "jointly agreed by the Board of Directors Consent and Silent Acquiescence Vote for granting, conveying, and empowering this Sovereign Irrevocable Power of Attorney." (Dkt. No. 3-4 at 12). The Affidavit of POA ostensibly takes its authority from the "Default Provision(s) of the RESPA-QWR Agreement" and other Christopher-generated documents. *Id.* at 6. It states that Defendants may use any "lawful, legal, and/or commercial means" under the Default Provisions of the RESPA-QWR agreement to satisfy the $190,000,000 debt that Plaintiffs allegedly owe Defendants. *Id.* at 11. The Affidavit of POA attaches a number of documents, including the "Default Provision(s) under this Qualified Written RESPA Request" as well as an "Affidavit of Sovereign Security Agreement," the latter which purports to be an agreement between Plaintiffs and Defendants indicating that Defendants, as attorney in fact for Plaintiffs, have a $190,000,000 claim against Plaintiffs. Defendants attached First BanCorp's Form 10-K Annual Report for 2015 filed with the SEC to the "Affidavit of Sovereign Security Agreement." (Dkt. No. 3-4 at 42). In

addition, Defendants have attached a "Sovereign Pledge Agreement," created by Defendants, where Plaintiffs purportedly "promise to pay to the order of the Sovereign Asarkasaamsu Raasar Ra II Karapernunto Herishetapaheru $190,000,000.00 on behalf of Carl F. Christopher and Chenzira D. Kahina." (Dkt. No. 3-4 at 56). The UCC Financing Statement attaches the "Affidavit of Sovereign Security Agreement," the Form 10-K, and the Affidavit of POA. (Dkt. No. 3-5).

On September 15, 2016, Plaintiffs filed Proofs of Service showing that Christopher was personally served with the Summons and Complaint on September 14, 2016 (Dkt. No. 7) and Kahina was personally served with the Summons and Complaint on September 15, 2016 (Dkt. No. 8). Also on September 15, 2016, Plaintiffs filed a Notice of Service indicating that Defendants were personally served with the Motion for Preliminary Injunction on September 14, 2016 (Christopher) and September 15, 2016 (Kahina). (Dkt. No. 9).

Defendants filed a Motion for an Extension of Time to answer the pleadings (Dkt. No. 17), which the Court granted. (Dkt. No. 19). The Court ordered Defendants to respond to Plaintiffs' Complaint and Motion for Preliminary Injunction by November 4, 2016. *Id.*

On that date, Defendants filed a Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2). (Dkt. No. 22).[5] They did not file a separate response to the Motion for Preliminary Injunction. In their Motion to Dismiss, Defendants assert that "Wrongdoers (Plaintiffs) . . . have no Subject Matter or Personal Jurisdiction in this Matter and their Filing of this Complaint is a Trespass by Conusance on the Living Witnesses Mixed Claim Action No. 1:16-

---

[5] Defendants' Motion is entitled "Special Sovereign Private Defender(s) Appearance, Reserving All Rights, Motion to Dismiss with Prejudice Plaintiff Complaint pursuant to FRCP Rule 12(b)(1) & (2) Action to Quiet Title, Declaratory Judgment, and Injunctive Relief for Lack of Subject Matter and Personal Jur[i]sdiction of the Plaintiffs First Bancorp and Firstbank Puerto Rico." (Dkt. No. 22).

Cv-057." *Id.* at 2.[6] Apparently, the Defendants are contending that because they filed a separate "Mixed Action Claim" in federal court,[7] the instant case interferes with Defendants' prosecution of that action; that because Plaintiffs allegedly "defaulted" in the foreclosure action, they lost their rights to defend the instant action; and that Defendants have a power of attorney over the Foreclosed Property. *Id.* at 2-11. They also contend that Plaintiffs have not proved that the documents and instruments Defendants filed in the public records are false (although they do not provide any support for their implicit contention that their self-generated documents have any legal authority); that they have been maligned by Plaintiffs associating them with the Sovereign Citizen movement; that they have sought a remedy outside of the judicial system because the judicial system was unfair and unequal given Plaintiffs' filing of false documents. *Id.* Attached to the Motion to Dismiss are Affidavits from both Defendants who state, *inter alia*, that they do not understand why FirstBank would associate their names with the Sovereign Citizens Movement, and such false attacks are an attempt to slander the cultural work they provide in the community. (Dkt. Nos. 22-1, 22-2). Defendants do not otherwise explain the grounds for their Motion to Dismiss based on lack of subject matter and personal jurisdiction.

Plaintiffs opposed the Motion to Dismiss, arguing that Defendants have offered no factual or legal basis for showing that subject matter and personal jurisdiction is lacking over Plaintiffs' Complaint. (Dkt. No. 23). They assert that they have pleaded the requisite facts for diversity

---

[6] In their Motion to Dismiss, Defendants claim that Plaintiffs are "interfering and trespassing on the Defenders property and rights of Claim to have a fraudulent, wrongful, libelous and void judgment removed"; that Plaintiffs "waived and lost their rights of defense and power of attorney to claim the Defenders property with default consent agreement to satisfy any, and all damages Plaintiffs caused to the Defenders"; and that Plaintiffs are "interfering with the rules and principles of the Default Provisions of RESPA-QWR as well as the Plaintiffs' refusal and nonresponse or rebuttal to the Lawful Sovereign Affidavit of Commercial Claim that the Defendants made during the Redemption Period to reclaim their rights to their property[.]" (Dkt. No. 22 at 2).

[7] See page 4, *supra*.

jurisdiction and Defendants have made, at best, only a facial challenge to subject matter jurisdiction which, examining the allegations of the Complaint, fails here. *Id.* at 2-3.

On November 8, 2016, Plaintiffs filed a "Motion for Entry of Preliminary Injunction" in which they referred to their initial Motion for Preliminary Injunction, and asserted that Defendants failed to oppose it. (Dkt. No. 25). They requested that the Court enter a preliminary injunction and schedule a hearing for a permanent injunction against Defendants. *Id.*

On November 15, 2016, Defendants filed a "Notice of Leave to Exercise Defenders Right to Amend Motion to Dismiss with Prejudice with Supportive Affidavits of Dkt. 22 Dated November 04, 2016" with the attached Amended Motion and other attachments. (Dkt. No. 27). In this document, which the Court construes as an Amended Motion to Dismiss, Defendants seek to amend their initial Motion to Dismiss by adding their signatures and adding some text. (Dkt. No. 27-4).[8] Plaintiffs opposed the Amended Motion to Dismiss, asserting that subject matter and personal jurisdiction exist in this case. (Dkt. No. 28).

On December 28, 2016, Plaintiffs' counsel filed a "Notice of Denial by Law Firm" in which they state that, in a December 27, 2016 letter, Defendants demanded payment from them resulting from the law firm's failure to accede to "spurious demands" Defendants made in the foreclosure action. (Dkt. No. 31). Counsel denied any claims advanced by Defendants and reserved the right to seek costs and fees resulting from Defendants' filings. *Id.* Defendants' December 2016 letter, attached as an exhibit, seeks, *inter alia*, $2,736,000 from counsel in accordance with a billing rate set forth in a "Schedule of Fees" created by Defendants. (Dkt. No. 31-1).

---

[8] The attachment to the Notice of Leave, which represents the Amended Motion to Dismiss, is entitled "Special Sovereign Private Defender(s) Appearance, Reserving All Rights, Motion to Dismiss with Prejudice Plaintiff Complaint pursuant to FRCP Rule 12(b)(1) & (2) Action to Quiet Title, Declaratory Judgment, and Injunctive Relief for Lack of Subject Matter and Personal Jur[i]sdiction of the Plaintiffs First Bancorp and FirstBank Puerto Rico." (Dkt. No. 27-4).

## II.    APPLICABLE LEGAL PRINCIPLES

### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Defendants have brought their Motion to Dismiss and Amended Motion to Dismiss pursuant to Rule 12(b)(1), lack of subject matter jurisdiction, and Rule 12(b)(2), lack of personal jurisdiction.

In analyzing a Rule 12(b)(1) motion for lack of subject matter jurisdiction, a court must first determine whether the motion presents a "facial" or a "factual" attack on the claim at issue "because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. On the other hand, a factual attack is an argument that there is no subject matter jurisdiction because the facts of the case—which may be ascertained by looking beyond the pleadings—do not support the asserted jurisdiction. *Id.* (internal quotation marks and citations omitted).

To invoke diversity jurisdiction—as invoked here—a plaintiff must "plead that he is a citizen of a particular state and that the defendants are citizens of a different state or states," *Johnson v. New York*, 315 F. App'x 394, 395 (3d Cir. 2009) (citing 5 Wright & Miller, Fed. Prac. & Proc. Civ. 3d § 1298)), and that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

### B.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

Once a defendant challenges a court's exercise of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus*

*Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). Although the plaintiff bears that burden, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (internal quotation marks and citations omitted); *see also D'Jamoos,* 566 F.3d at 102 (quoting *Miller Yacht Sales v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

In determining whether a court may exercise personal jurisdiction, a court examines "the relationship among the defendant, the forum, and the litigation." *Pinker*, 292 F.3d at 368. "The two types of personal jurisdiction are general jurisdiction and specific jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007). A defendant is subject to general jurisdiction "when it has continuous and systematic contacts with the forum state." *Deutz AG,* 270 F.3d at 150 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)). The "'paradigm forum' in which an individual defendant is amenable to general jurisdiction is the individual's domicile." *Farber v. Tennant Truck Lines, Inc.,* 84 F. Supp. 3d 421, 433 (E.D. Pa. 2015) (quoting *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 760 (2014)). "Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

### C. Preliminary Injunction

Injunctive relief under Rule 65 of the Federal Rules of Civil Procedure is an "'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). The factors to be considered in determining whether such relief should be granted are well-established. Those factors are: (1) a reasonable probability of success on the merits; (2) that the moving party will suffer irreparable harm if the

injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). The plaintiff bears the burden of establishing each element in its favor in order to warrant injunctive relief. *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

A district court does not need to hold a hearing as a prerequisite for ruling on a motion for a preliminary injunction. *ADP, LLC v. Lynch*, 678 F. App'x 77, 79 (3d Cir. 2017). Instead, "'[i]t has long been recognized that a preliminary injunction may issue on the basis of affidavits and other written evidence, without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue.'" *Id.* (quoting *Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir. 1982)).

## III. MOTIONS TO DISMISS

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). Accordingly, the Court will address the subject matter and personal jurisdiction arguments first.

### A. Subject Matter Jurisdiction

Defendants argue that the Complaint should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), because

> (1) Plaintiff[s are] interfering and trespassing on the Defenders property and rights of Claim to have a fraudulent, wrongful, libelous and void judgment removed; (2) Plaintiffs waived and lost their rights of defense and power of attorney to claim the Defenders property with default consent agreement to satisfy any, and all damages

14

> Plaintiffs caused to the Defenders. . . . and (3) Plaintiffs [are] interfering with the
> rules and principles of the Default Provisions of the RESPA-QWR as well as the
> Plaintiff[s'] refusal and nonresponse or rebuttal to the Lawful Sovereign Affidavit
> of Commercial Claim that the Defendants made during the Redemption Period to
> reclaim their Rights to their property[.]

(Dkt. No. 22 at 2). They then argue that since Plaintiffs have no subject matter or personal

jurisdiction over this matter, they have "trespassed by Conusance" upon both the Defendants and

the Mixed Claim action they have filed. *Id.* at 2-3.

Once again, Defendants rehash the same arguments the Court rejected in the foreclosure

action, *FirstBank v. Christopher*—that Plaintiffs defaulted under the Qualified Written RESPA

Request, which allowed Defendants to, *inter alia*, collect on Defendants' liability insurance for

the damages they sustained; that Defendants have an unlimited Power of Attorney over Plaintiffs;

and that Plaintiffs have waived all claims against Defendants. *Id.* at 3-6. None of these arguments

are, factually or legally, directed to an alleged lack of subject matter jurisdiction but ostensibly

address the merits of the foreclosure action which already has been resolved.

Even so, when presented with a challenge to jurisdiction, a Court must assure itself that

jurisdiction exists. Here, it is difficult to determine the basis for Defendants' challenge to the

Court's subject matter jurisdiction from their prolix and inapposite arguments. Since Defendants

have not contested the facts set forth in the Complaint, but have simply recycled previously-

rejected arguments that the judgment in the foreclosure case is void due to fraud and Plaintiffs

have waived any defenses and rights they may have to the remedies Defendants seek to impose,

the Court concludes that Defendants have mounted a facial Rule 12(b)(1) challenge by attacking

the Complaint on its face without contesting its alleged facts. *Hartig Drug Co. Inc. v. Senju Pharm.

Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016). Such an attack requires the Court to "consider the

allegations of the complaint as true." *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 301

n.3 (3d Cir. 2006)).

The Complaint properly pleads diversity jurisdiction: that the citizenship of Plaintiffs, as corporations existing under the laws of Puerto Rico, is diverse from that of Defendants, who are citizens of the U.S. Virgin Islands. (Dkt. No. 1, ¶¶ 2-5). The Complaint also alleges that, as an action in equity to quiet title to real property in the Virgin Islands, the matter in controversy—the value of the real property at issue—exceeds the sum of $75,000.00, exclusive of interest and costs. *Id.* ¶ 1. Accordingly, Plaintiffs have properly pleaded diversity jurisdiction and appropriately invoked the subject matter jurisdiction of this Court. The Court therefore rejects Defendants' argument that subject matter jurisdiction is lacking pursuant to Fed. R. Civ. P. 12(b)(1).

In their Amended Motion to Dismiss (Dkt. No. 27-1), Defendants again mention, in passing, that the Court lacks personal and subject matter jurisdiction, but devote that motion, as discussed above, to assertions unrelated to personal and subject matter jurisdiction. *Id.* The Court finds that the Amended Motion suffers from the same shortcomings as the initial Motion to Dismiss and rejects Defendants' arguments that subject matter jurisdiction is lacking over the Complaint.

### B. Personal Jurisdiction

Other than invoking Fed. R. Civ. P. 12(b)(2) to allege a lack of personal jurisdiction, Defendants have not otherwise provided any facts, law, or argument to support their contention.

The record in this case shows that both Defendants have "continuous and systematic" contacts with the forum (the Virgin Islands) to support a finding of general jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414, 416. Both Defendants are alleged—without challenge— to be citizens of the Virgin Islands, and that fact is taken as true. The Defendants provide a St. Croix address on their Court filings. *See Farber,* 84 F. Supp. 3d at 433 (opining that the "'paradigm forum' in which an individual defendant is amenable to general jurisdiction is the individual's

domicile.").[9] When examining the "relationship among the defendant, the forum, and the litigation," *Pinker*, 292 F.3d at 368, for purposes of ascertaining general jurisdiction, all factors point to this Court exercising general jurisdiction over the Defendants, who are citizens of the Virgin Islands, reside in the Virgin Islands, and the Foreclosed and Owned Commercial Properties at issue are located in the Virgin Islands. Defendants were personally served with the Summons and Complaint in the District of the Virgin Islands. (Dkt. Nos. 7, 8). Accordingly, the Court rejects Defendants' conclusory argument in the initial Motion to Dismiss and the Amended Motion to Dismiss that the Complaint should be dismissed for lack of personal jurisdiction.

## IV.     MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs have argued that the four factors they must show for the issuance of a preliminary injunction have been met, and that Defendants did not oppose their Motion. (Dkt. No. 3). While the Court ordered Defendants to file a response to both the Complaint and the Motion for Preliminary Injunction by November 4, 2016, Defendants filed a Motion to Dismiss on that date. (Dkt. No. 22). Even if the Court were to construe the Motion to Dismiss as an Opposition to the Motion for Preliminary Injunction, none of the Defendants' arguments address the preliminary injunction factors. Because there are no unresolved relevant factual issues, the Court finds that it is not necessary to hold a hearing on the Motion for Preliminary Injunction. *ADP, LLC*, 678 F. App'x at 79.

### A.  Reasonable Probability of Success on the Merits

The Court finds that Plaintiffs have shown a reasonable probability of success on the merits to warrant the issuance of a preliminary injunction. In particular, the Declaration of FirstBank Vice President John Lewis avers that the documents recorded by Defendants constitute a cloud on the

---

[9] Black's Law Dictionary defines domicile, *inter alia*, as "[t]he place at which a person has been physically present and that the person regards as home[.]" Black's Law Dictionary (10th ed. 2014).

title to property owned by the Bank, which renders that property uninsurable and precludes sale; the process of quieting title is costly and exposes the Bank to risk of loss and affects its compliance with regulations; and, following "diligent inquiry," he determined that neither Plaintiff is indebted to the Defendants and neither Plaintiff has granted any property liens in favor of Defendants. (Dkt. No. 3-7). Defendants offered no evidence to challenge these relevant facts.

Many of the documents upon which Defendants rely to support the claims made and positions taken in their Affidavit Cover Letter— such as the "Certificate of Non-Response and Non-Performance"; "Affidavit Verifying the Rights of Defendant Adverse Claim, Interest Claim, Equity, and Ownership Claim" (which includes the "Default Provision(s) under this Qualified Written RESPA Request"); and "Affidavit of Facts and Truth in Support of Defendants['] Motion of Opposition to Plaintiff[s'] Motion"—were filed in the foreclosure action, *FirstBank v. Christopher,* 13-cv-0093, as Dkt. Nos. 80-2, 125, and 139. The Court has repeatedly rejected all of Defendants' arguments in that case—including the specific arguments here—finding them to be "rambling and often unintelligible" as well as "procedurally inapt and substantively meritless." (Dkt. Nos. 86, 118, 119, 120, 140, 153, 192 in 13-cv-0093).

Thus, the legal and factual underpinnings for many of the documents that Defendants have filed in the public records, which serve as clouds on the titles of the properties against which they have been filed, have been rejected by this Court numerous times. Those documents which surfaced after the litigation in the debt and foreclosure action had concluded—in particular, the May 3, 2016 UCC filing, the April 29, 2016 "Affidavit of Sovereign Security Agreement" and the April 27, 2016 "Sovereign Irrevocable Power of Attorney"—were apparently created by Defendants in support of their continuing argument that FirstBank's foreclosure and sale of the

Foreclosed Property were improper and their continuing refusal to accept the Court's adjudication of that proceeding.[10]

Plaintiffs have shown through declarations and other written evidence that a preliminary injunction is warranted. On the other hand, Defendants have simply rehashed arguments—which underpin the three filings with the Recorder of Deeds and Corporations Offices at issue here—that the Court has previously rejected. The Court finds that Plaintiffs have shown a reasonable probability of success on the merits in support of their Motion for a Preliminary Injunction. Thus, this factor favors the granting of injunctive relief.

### B. Irreparable Harm

Irreparable harm is "potential harm which cannot be redressed by a legal or an equitable remedy[.]" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). To satisfy this element, the party moving for injunctive relief must demonstrate that "'irreparable injury is *likely* in the absence of an injunction.'" *Ferring Pharms., Inc.,* 765 F.3d at 217 & n.11 (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "It is not enough 'for the harm to be serious or substantial, rather, it must be so peculiar in nature that money cannot compensate for the harm.'" *Beberman v. U.S. Dep't of State,* 2016 WL 1181684, at *3 (D.V.I. Mar. 24, 2016) (quoting *Bieros v. Nicola*, 857 F. Supp. 445, 445 (E.D. Pa. 1994)).

Plaintiffs identify two areas where they have suffered and would suffer "irreparable harm": (1) being unreasonably hampered in their ability to properly market the Foreclosed Property and the Owned Commercial Property, as required by banking regulations and prudent banking practices; and (2) given Defendants' threat to continue filing false documents not only against

---

[10] Given the evidence submitted by Plaintiffs which Defendants do not challenge, the Court may issue a preliminary injunction without a hearing because there is no unresolved relevant factual issue before the Court to be adjudicated at a hearing. *ADP, LLC*, 678 F. App'x at 79.

Plaintiffs' property but against residential properties of individuals associated with Plaintiffs, they will be placed in a position where they would have to play "a perpetual game of catch-up" in discovering new documents filed by Defendants, amending their pleadings, and seeking new orders to remove them from the public records. (Dkt. No. 3 at 9-10).[11] Plaintiffs observe that other courts have found "bogus public record filings against institutions and individuals to constitute 'irreparable harm' both in the context of granting interim relief and in granting permanent injunctions." *Id*. at 9, citing cases.

The remedy here is not "purely economic in nature and thus compensable in money," as evidenced by Plaintiffs' description of the difficulties they have experienced and likely will experience in seeking clear title to the Foreclosed Property and Owned Commercial Property as a result of Defendants' actions. *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987). As one district court observed, "[t]he remedies available in civil actions to void false liens are inadequate as they do little to deter Defendant[s] from filing future false liens" in the absence of an injunction. *United States v. Kadosh*, 2014 WL 840777, at *3 (E.D. Cal. Mar. 4, 2014); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an injunction is to prevent future violations. . . . The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.").

Further, courts have found that where disgruntled or misguided individuals file facially frivolous and/or fraudulent documents in the public records against public employees—in particular, against employees of the Internal Revenue Service—purporting to create a

---

[11] As indicated *supra*, Defendants amended the Complaint in their "Mixed Action Claim." The Amended Complaint did not contain as an attachment an Affidavit which explicitly threatened the possibility of Defendants filing lis pendens on the residential property of other potential parties associated with Plaintiffs. (Dkt. No. 1-2 at 16 in 16-cv-0057). Even if that document is not attached to the Amended Complaint in the Mixed Action Claim, the threat—which was extant for over a year before amendment—is not something that Plaintiffs or the Court can easily ignore, given Defendants' actions in filing the four other lis pendens in the first instance.

nonconsensual lien or encumbrance on their property, such behavior constitutes irreparable harm. *United States v. James,* 2015 WL 7351394, at *8 (M.D. Fla. Nov. 20, 2015); *United States v. Agra*, 2014 WL 1671592, at *5 (E.D. Cal. Apr. 28, 2014); *United States v. McGugan*, 600 F. Supp. 2d 608, 614-15 (D.N.J. 2014); *United States v. Lindbloom*, 1997 WL 530605, at *2 (W.D. Wash. Apr. 16, 1997). Although the defendants' filings in the above cases targeted government officials rather than commercial entities, the harm visited upon the subjects is similar. In *United States v. Salih El Bey*, 2007 WL 4563479, at *3 (W.D.N.C. Dec. 21, 2007), the court quoted *United States v. MacElvain,* 858 F. Supp. 1096, 1100 (M.D. Ala. 1994), which found that the "filing of such frivolous documents imposes irreparable harm on the individuals and entities that are the victims of the liens"—a harm that also exists here. The Court finds the reasoning in these cases persuasive, and therefore concludes that Plaintiffs have made a showing of irreparable harm.

Plaintiffs ask that Defendants be prohibited from recording documents against their property as well as against the property of "persons associated with Plaintiffs." (Dkt. No. 3 at 11). They have also requested that Defendants be ordered to disclose if they have made any other filings in the public records against Plaintiffs or "persons associated with Plaintiffs." *Id.* The Court finds the terminology used by Plaintiffs—*i.e.,* "persons associated with Plaintiffs"—too broad and vague at this stage of the proceedings, and encompassing individuals who are not parties to this litigation. Plaintiffs have not made a showing of any injury suffered by unnamed persons simply by the fact that they are "associated" in some way with Plaintiffs. However, because the genesis of the problem here appears to be Defendants' response to the earlier foreclosure proceeding (Case No. 1:13-cv-0093), the Court will require the disclosure of notices or documents filed or recorded by Defendants that bear any connection to the foreclosure proceeding. In addition, the Court will entertain argument in the next stage of the proceedings if Plaintiffs can describe the "persons

associated with Plaintiffs" with specificity and show that they have suffered or will suffer irreparable harm.

### C.  Harm to Nonmoving Party

Plaintiffs argue that the only potential harm to Defendants that could result from granting a preliminary injunction would be "to preclude them from recording *valid* legal and commercial documents involving Plaintiffs, or persons associated with Plaintiffs, without first submitting them to the Court for approval." (Dkt. No. 3 at 10). They observe that, "while a limitation on access to the system of public records is not to be taken lightly," the Court should nevertheless consider that "(1) the likelihood of Defendants having *legitimate* business dealings requiring such filings is very low; and (2) the inconvenience to them is minimal." *Id.*

The Court concludes that granting preliminary injunctive relief will not result in greater harm to Defendants. They will not be injured by being precluded from recording frivolous liens and documents against Plaintiffs. On the other hand, in the event that Defendants seek to record valid documents, clearance by the Court will not prevent such a filing, but simply impose a temporary delay occasioned by the Court's review. Accordingly, the third factor necessary for injunctive relief has been satisfied.

### D.  Public Interest

Plaintiffs note that the public interest would be served by issuing interim relief such that employees of the Recorders Office and Corporations Division would not have to spend their time recording "fictitious documents intended merely to harass persons against whom Mr. Christopher has a grudge." *Id.* They contend that such filings are contrary to the purpose of public records— *i.e.*, promoting efficient commercial transactions and protecting property rights. *Id.* at 11. In addition, they assert that the public interest is promoted by discouraging the misuse of the public record systems to harass others. *Id.*

The Court agrees that it is in the public interest to safeguard the integrity of the public records system, and that interim relief is warranted so as to prevent the filing of frivolous and harassing documents. Accordingly, the Court finds that the public interest factor weighs in favor of injunctive relief.

## V. CONCLUSION

Based on the foregoing, the Court will grant Plaintiffs' Motion for a Preliminary Injunction (Dkt. No. 3) and will order the following interim relief:

1. On or before **August 16, 2018,** Defendants shall file a notarized Affidavit, in which they provide, under penalty of perjury:
   a. The legal description of any property of Plaintiffs against which Defendants have filed or recorded notices or documents of any kind in any public registry of any governmental agency or the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof;
   b. A full description of all documents so filed or recorded, the place of recording or filing, and the information that identifies the recording for each such document.

2. On or before **August 16, 2018,** Defendants shall file a notarized Affidavit, in which they provide, under penalty of perjury:
   a. The legal description of any property against which Defendants have filed or recorded notices or documents of any kind in any public registry of any governmental agency or the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof that bear any connection whatsoever to the foreclosure proceedings in Case No. 1:13-cv-0093 or the Mixed Action Claim in Case No. 1:16-cv-0057;
   b. A full description of all documents so filed or recorded, the place of recording or filing, and the information that identifies the recording for each such document.

3. On or before **August 16, 2018**, Defendants shall file with the Court complete copies of all notices or documents of any description which Defendants have filed or recorded in any public registry of any governmental agency of the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof which purport to create or document any claim of debt or lien against Plaintiffs. Defendants shall file a notarized Affidavit along with these documents attesting, under penalty of perjury, that these documents represent the complete list of such documents.

4. On or before **August 16, 2018**, Defendants shall file with the Court complete copies of all notices or documents of any description which Defendants have filed or recorded in any public registry of any governmental agency of the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof that bear any connection whatsoever to the foreclosure proceeding in Case No. 1:13-cv-0093 or the Mixed Action Claim in Case No. 1:16-cv-0057, and which purport to create or document

any claim of debt or lien. Defendants shall file a notarized Affidavit along with these documents attesting, under penalty of perjury, that these documents represent the complete list of such documents.

5. Defendants shall be preliminarily enjoined from filing or recording any liens, encumbrances, claims, or other documents, of any description, in the public records of the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof, purporting to create or constitute a debt or lien or encumbrance against the property of Plaintiffs without first having obtained the permission of this Court to do so.

6. Defendants shall be preliminarily enjoined from filing or recording any liens, encumbrances, claims, or other documents, of any description, in the public records of the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof, that bear any connection whatsoever to the foreclosure proceeding in Case No. 1:13-cv-0093 or the Mixed Action Claim in Case No. 1:16-cv-0057, and that purport to create or constitute a debt or lien or encumbrance against any property without first having obtained the permission of this Court to do so.

The Court will set a briefing schedule on Plaintiffs' Motion for Summary Judgment in the attached Order.[12]

The Court will deny as moot Plaintiffs' Motion for Entry of Preliminary Injunction (Dkt. No. 27), and will deny Defendants' initial Motion to Dismiss (Dkt. No. 22) and Amended Motion to Dismiss (Dkt. No. 27).[13]

An appropriate Order accompanies this Memorandum Opinion.

Date: August 2, 2018                             _____/s/_____
                                                 WILMA A. LEWIS
                                                 Chief Judge

---

[12] On December 27, 2017, Plaintiffs filed a Motion for Summary Judgment, seeking declaratory and injunctive relief against Defendants. (Dkt. No. 33).

[13] The Court will waive the usual requirement set forth in Federal Rule of Civil Procedure 65(c) that a plaintiff seeking preliminary injunctive relief post cash or a bond as security. The Court finds that the harm to Plaintiffs is significantly greater than the potential loss to the enjoined parties, and that Plaintiffs' application seeks to enforce significant matters of public interest—promoting efficient commercial transactions, protecting property rights, and safeguarding the public records system. *See Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991).