## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

FIRST BANCORP and                )
FIRSTBANK PUERTO RICO,           )
                                 )
        Plaintiffs,              )
                                 )
        v.                       )      Civil Action No. 2016-0060
                                 )
CARL F. CHRISTOPHER a/k/a         )
Asarkasaamsu Raasar Ra II Karapernuntu    )
Herishetpaheru a/k/a Asarkasaamsu R.R. II   )
K. Herishetapaheru a/k/a Nsw Setep N Ra Neb Ka  )
Ra Herishetapaheru Neb Aha Asarkaamsu    )
Raasar Ra II KaraPernuntu Herishetapaheru  )
a/k/a Nesut Ra Setep N Ra Neb Ka Ra     )
Herishetapaheru Neb Aha a/k/a Nesut Sa Ra  )
Setep N Ra Neb Ka Ra Herishetapaheru Neb Aha  )
a/k/a Asarkasaamsu' Raasar' Ra II       )
KaraPernuntu Herishetapaheru a/k/a     )
Asarkasaamsu Raasar II KaraPernuntu    )
Herishetapaheru; and              )
CHENZIRA D. KAHINA,               )
                                 )
        Defendants.              )
_____)

**Appearances:**
**Warren B. Cole, Esq.**
**Elise Catera, Esq.**
St. Croix, U.S.V.I.
    *For Plaintiffs*

**Carl F. Christopher,** *Pro Se*
**Chenzira D. Kahina,** *Pro Se*
St. Croix, U.S.V.I.
    *Defendants*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

    THIS MATTER comes before the Court on Plaintiffs First BanCorp and FirstBank Puerto

Rico's ("Plaintiffs") "Renewed Motion for Summary Judgment" ("Motion") in which Plaintiffs

seek a permanent injunction against Defendants Carl F. Christopher a/k/a Asarkasaamsu Raasar

Ra II Karapernuntu Herishetpaheru ("Christopher") and Chenzira D. Kahina ("Kahina") (collectively, "Christophers" or "Defendants"). (Dkt. No. 87).[1] The Christophers filed Oppositions to Plaintiffs' Motion for Summary Judgment (Dkt. Nos. 59, 90), and Plaintiff filed a Reply to Defendants' November 5, 2022 Opposition (Dkt. No. 91). For the reasons that follow, the Court will grant Plaintiffs' Motion and provide relief in the form of a permanent injunction.

## I.     BACKGROUND

This case arises out of an earlier mortgage foreclosure proceeding in this Court, *FirstBank Puerto Rico v. Carl Christopher a/k/a Asarkasaamsu Herishetapaheru and Chenzira D. Kahina (his wife)*, Civil Action No. 2013-0093 ("*Christopher I*"), in which FirstBank filed an action against Defendants seeking to enforce a Promissory Note and to foreclose on a Mortgage encumbering property described as:

> Plot No. 176-C of United 21 Subdivision of The Whim Estates, West End Quarter, St. Croix, U.S. Virgin Islands, consisting of 1.077 U.S. acres more or less, as more fully shown on PWD No. 594 dated June 5, 1957

(the "Foreclosed Property"). *Christopher I*, Dkt. No. 1 at ¶ 6. On February 27, 2015, the Court granted FirstBank's Motion for Summary Judgment, in which FirstBank obtained a judgment of debt against Defendant Christopher and foreclosure of mortgage against both Defendants. *Id.* at Dkt. Nos. 84, 85.

On August 17, 2016, the Christophers then filed an action against FirstBank and its Chief Executive Officer seeking to enforce a "default judgment" and "consent agreement for forfeiture and damages." *Herishetapaheru v. FirstBank Puerto Rico*, Civil Action No. 2016-0057

---

[1] Plaintiffs initially filed a Motion for Summary Judgment (Dkt. No. 33), and subsequently filed a "Renewed Motion for Summary Judgment" (Dkt. No. 87), which added arguments seeking the dismissal of Defendants' counterclaims. The Court will deny the initial Motion for Summary Judgment as moot.

("*Christopher II*"),[2] Dkt. No. 1-2.  The Christophers alleged that they were entitled to a default judgment because FirstBank had failed to respond to a request made by Defendants for information regarding their loan under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA").[3] *Id.* at 6. The Christophers also asserted that the Judgment in *Christopher I* should be set aside. *Id.* at 2-3, 6-13.

In their Amended Complaint in *Christopher II*, the Christophers reasserted the aforementioned claims, and also alleged that FirstBank had (1) unconstitutionally denied them a right to a jury trial; (2) failed to prove it was the holder of the Note; (3) committed fraud on the Court; (4) failed to prove "lawful consideration" of the Mortgage; and (5) defamed Defendants. *Id.* at Dkt. No. 90-1 at §§ 3, 6. The Christophers further alleged that FirstBank's inadequate response to their RESPA request constituted acquiescence; Defendants were thus entitled to default judgment; and the Christophers had been granted an irrevocable power of attorney over FirstBank's assets. *Id.* at §§ 3, 4.[4] The Christophers sought damages in the amount of

---

[2] The action was fully entitled, "*I, a sovereign man, Asarkasaamsu Raasar Ra II Karapernuntu Herishetapaheru as the Sovereign Prosecutor: for a Private Prosecutor Witness Living Man, f/k/a: Carl F. Christopher Family and for a Private Prosecutor Living Woman Chenzira D: of the Kahina Family v. FirstBank Puerto Rico,*" Civil Action No. 2016-0057.

[3] RESPA is designed to protect home buyers against material nondisclosures in settlement statements and abusive practices in the settlement process. A borrower can submit a "Qualified Written Request" (QWR), which is "a written correspondence that (1) identifies the name and account of the borrower, and (2) includes a statement that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B); *Cole v. Wells Fargo Bank, N.A.*, 790 F. App'x 460, 464 (3d Cir. 2019). QWRs must be "[related to] receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ... and making the payments of principal and interest and such other payments." 12 U.S.C. § 2605(i)(3).

[4] Contrary to the Christophers' assertions in *Christopher II* that Plaintiffs did not respond to their RESPA request, Plaintiffs asserted that they provided Defendants with all the documents that were required under RESPA, including a copy of Defendants' entire loan file and additional documents provided through a Rule 26(a) disclosure. *Christopher II*, Dkt. Nos. 105-2 at ¶¶ 1-5; 105-1 at 6-7.

$190,000,000. *Id.* at § 7. On December 7, 2020, the Court granted FirstBank's Motion for Summary Judgment; denied several Motions to Amend filed by the Christophers; denied the Christophers' Motion to Set Aside the *Christopher I* judgment; and denied Defendants' Motion to Disqualify FirstBank's counsel. *Id.* at Dkt. Nos. 134, 135.

On September 6, 2016, less than a month after the Christophers commenced *Christopher II*, Plaintiffs filed the instant action. (Dkt. No. 1). In the Complaint, Plaintiffs allege, *inter alia*, that, in April and May 2016—following the Judgment in *Christopher I* and the commencement of *Christopher II*—Defendants recorded three liens against properties owned by Plaintiffs. *Id.* at ¶¶ 9-11. First, Plaintiffs allege that Defendants recorded in the public records of the Recorder of Deeds, Office of the Lieutenant Governor of the Virgin Islands ("Recorder of Deeds") a 53-page document entitled "Affidavit Cover Letter" purporting to be, *inter alia*, "an irrevocable power of attorney appointing Defendants as agents of FirstBank to execute documents on its behalf," and "vest[ing] title to the Foreclosed Property in Defendants." *Id.* at ¶ 9. Since the document was recorded against the Foreclosed Property, Plaintiffs contend that it constitutes a cloud on the title of that property. *Id.*

The Complaint further alleges that, on or about May 3, 2016, Defendants recorded a second document in the Recorder of Deeds. Totaling 67 pages in length, the document is entitled "Affidavit of POA with Security Interest Instruments," purporting, *inter alia*, "(a) to be an irrevocable power of attorney appointing Defendants as agents of Plaintiffs to execute documents on their behalf; (b) to declare Plaintiffs indebted to Defendants in the amount of $190,000,000; and (c) to declare such indebtedness to be a lien against the property of Plaintiffs." *Id.* at ¶ 10. This document is recorded against both the Foreclosed Property and the following properties owned by FirstBank:

Plot No. 4 of Parcel 3 in Estate Orange Grove, Company Quarter, St. Croix, U.S. Virgin Islands, consisting of approximately 1.863 U.S. acres, as more fully shown and described on OLG Drawing No. 991 dated December 1, 1960;

Parcels Nos. 12 and 13 of King Street, Christiansted, St. Croix, U.S. Virgin Islands, as more fully shown and described on OLG Drawing No. 1167 dated February 10, 1962; and

Parcel No. 14, Christiansted Town, St. Croix, U.S. Virgin Islands

(collectively, the "Owned Commercial Property").[5] *Id.* at ¶ 8. Plaintiffs allege that this document constitutes a cloud on the title of the Foreclosed Property and the Owned Commercial Property. *Id.*

With regard to the third lien, Plaintiffs allege that, on or about May 3, 2016, the Christophers recorded in the public records of the Office of Corporations, Office of the Lieutenant Governor ("Corporations Division"), a Uniform Commercial Code-1 ("UCC-1") Financing Statement attaching a 50-page document purporting, *inter alia*, "(a) to be an irrevocable power of attorney appointing Defendants as agents of Plaintiffs to execute documents on their behalf; (b) to declare Plaintiffs indebted to Defendants in the amount of $190,000,000; and (c) to declare such indebtedness to be a lien against the property of Plaintiffs." *Id.* at ¶ 11. Plaintiffs aver that this document is recorded against the names of both Plaintiffs and is "a cloud upon the ownership and title of all property of the Plaintiffs wherever located."[6] *Id.*

---

[5] In a letter to Plaintiffs' counsel regarding Defendants' compliance with the Court Order granting the preliminary injunction in this matter (Dkt. No. 37), Defendants claimed that they had filed a lien on a property in St. Thomas and on the Foreclosed Property and Owned Commercial Property in St. Croix. (Dkt. No. 55-2 at 4). During the February 11, 2019 hearing, counsel for Plaintiffs said that he did not locate any evidence in the public records that any document had been recorded against the St. Thomas property, or any other property owned by FirstBank in St. Thomas. (Dkt. No. 82 at Tr. 19:10-19:13).

[6] During the hearing held on February 11, 2019, counsel for Plaintiffs explained that UCC financing statements that are recorded in the Corporations Division are not recorded against specific property, but rather against the name of the account debtor. (Dkt. No. 82 at Tr. 10:5-

Plaintiffs allege that the Christophers knew these recorded documents to be false instruments when they submitted them to the Recorder of Deeds and to the Corporations Division for recording and filing in the public records. *Id.* ¶ 12. Further, Plaintiffs assert that Defendants filed *Christopher II* against FirstBank and its Chief Executive Officer (the "Mixed Action Claim"), in which Defendants threatened to record "other false documents against the property of Plaintiffs and 'the residential properties of other potential defendants'" which—according to Plaintiffs— pose a "continuing threat" to the property rights of Plaintiffs and perhaps to other persons with whom Plaintiffs are associated (such as their officers, employees and agents). *Id.* ¶¶ 13, 14.[7]

---

11:11). Therefore, Plaintiffs' counsel asserted that the filing would encumber all property in the Virgin Islands belonging to FirstBank that is accounted for within the Corporations Division. *Id.* at Tr. 11:10-Tr. 11:11.

Further, in the recorded UCC-1 financing statement, the Christophers reference two exhibits for the collateral covered by the Financing Statement: a Secured Party Agreement & Certain PGS Debtor's SEC-10-K Financing Statement and Irrevocable Power of Attorney. (Dkt. No. 3-5 at 4). These documents either make claim to or reference certain property of Plaintiffs. For example, Defendants state in the Secured Party Agreement that "the [d]ebtor grants to the Sovereign Secured Party to secure payment and performance in full of all of the Obligations a security interest in, and pledges and assigns...the following corporate personal properties, assets, rights of the Debtor and all their subsidiaries, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (all of the same being hereinafter the "Collateral"): All personal and fixture property of every kind and nature...." *Id.* at 8. The Christophers then provide a voluminous list of properties. Therefore, the Christophers virtually claim all of Plaintiffs' properties through the UCC-1 financing statement.

[7] Attached to Christopher's original Complaint in the Mixed Action Claim was an Affidavit which, *inter alia*, listed the *lis pendens* that he had filed against Plaintiffs' real property (Dkt. No. 1-2 at 15 in *Christopher II*). In the Complaint, Christopher stated that the list "is subject to change to also include the residential properties of other potential defendants." *Id.* at 16. Christopher amended his Complaint in the Mixed Action Claim in November 2017. (Dkt. No. 90-1). The Amended Complaint does not contain as an attachment the aforementioned Affidavit with the reference to the filing of the *lis pendens* and the reference to the properties of other potential defendants. In any event, the *lis pendens* already filed against Plaintiffs' property remains extant, regardless of whether Christopher intends to add encumbrances on property of others associated with Plaintiffs.

In the Complaint, Plaintiffs assert that Defendants may have "caused other false documents to be recorded in the public records of the Virgin Islands, or of other jurisdictions, of which Plaintiffs are presently unaware." *Id.* at ¶ 15. They assert that Plaintiffs are not indebted to the Christophers nor is any of their property subject to any lien in favor of the Christophers; that the Christophers' actions have created a cloud on the title of the Foreclosed Property, the Owned Commercial Property, and all of Plaintiffs' property, rendering record title to the Foreclosed Property and Owned Commercial Property unmerchantable; and that the Christophers' actions have been taken with malice and with the intent to unlawfully cause harm to Plaintiffs. *Id.* at ¶¶ 16-18. Plaintiffs assert that they have no adequate remedy at law to the Christophers' actions. *Id.* at ¶ 19.

On September 7, 2016, one day after filing the Complaint, Plaintiffs filed a Motion for a Preliminary Injunction, setting out the same arguments in their Complaint and their various requests for injunctive relief. (Dkt. No. 3). Attached to the Motion for Preliminary Injunction were copies of the three documents signed and recorded by Christopher. (Dkt. Nos. 3-3, 3-4, 3-5). Also attached were documents about the Sovereign Citizens Movement; a Declaration of Krystal Phillip discussing the results of a public records search reflecting that the aforementioned liens were recorded against either or both of the Foreclosed Property and the Owned Commercial Property, as well as all other property owned by Plaintiffs; and a Declaration of John Lewis stating, *inter alia,* that the liens constituted a cloud upon Plaintiffs' title to the properties. (Dkt. Nos. 3-1, 3-2, 3-6, 3-7).

On August 2, 2018, the Court granted Plaintiffs' Motion for a Preliminary Injunction and granted certain interim relief. (Dkt. No. 37). The Court preliminarily enjoined Defendants from filing or recording any liens, encumbrances, claims, or other documents of any description in the

public records of the United States, the Territory of the Virgin Islands, or of any State or Territory or of any political subdivision thereof, that purported to create or constitute a debt or lien or encumbrance against Plaintiffs' property without first having obtained the permission of the Court. *Id.* at 2, 3. The Court also ordered Defendants to file a notarized Affidavit identifying any property of Plaintiffs against which Defendants have filed or recorded any notices or documents, and to provide the Court with copies of the notices or documents. *Id.* Defendants were also ordered to provide a sworn statement identifying any property pertaining to *Christopher I* or *Christopher II* against which Defendants have filed or recorded any notices or documents, and to provide the Court with copies of the notices or documents.  *Id.*

In its Memorandum Opinion, the Court also noted that many of the documents recorded by Defendants in the public records had previously been filed in *Christopher I;* the arguments therein had been rejected by the Court as "procedurally inapt and substantively meritless"; and that Defendants had apparently created the UCC filing in support of their position that the foreclosure and sale of the Foreclosed Property were improper. (Dkt. No. 38 at 18).

Plaintiffs subsequently filed a Motion for Summary Judgment, attaching a Memorandum of Law and a Declaration of Plaintiff's counsel in support of the Motion. (Dkt. No. 87, 87-2). In addition to seeking a judgment as described in their initially filed Motion, Plaintiffs also seek the dismissal of Defendants' counterclaims, arguing that such claims are barred by the doctrine of collateral estoppel (Dkt. No. 87-2 at 12-13). In the Motion, Plaintiffs request a Judgment declaring: that Plaintiffs are not indebted to Defendants in any amount; that the real property described in the Complaint is not subject to any lien in favor of Defendants; that the three liens recorded against the Plaintiffs' Property are void *ab initio*; and that Defendants are "permanently enjoined from filing or recording any liens, encumbrances, claims, or other documents, of any description, in the

public records of the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof, purporting to create or constitute a debt or lien or encumbrance against the property of Plaintiffs or the property of any officer, employee, agent, attorney, or person associated with Plaintiffs, without first having obtained the permission of this Court." (Dkt. No. 87 at 1-2). Further, Plaintiffs seek the dismissal of Plaintiffs' counterclaims, with prejudice. *Id.* at ¶ 5.

Shortly thereafter, Defendants filed an initial Opposition to the Motion for Summary Judgment. (Dkt. No. 59). Defendants argue that the summary judgment motion is not ripe for adjudication because Plaintiffs had not answered the counterclaim[8], and Defendants needed Rule 56(d) discovery in order to adequately respond to the summary judgment motion. *Id.* at ¶ 24. Therefore, Defendants requested that the Court deny Plaintiffs' Motion without prejudice in the interim. *Id.*

In a Second Opposition, Defendants reiterate their right of trial by jury; assert that Plaintiffs committed fraud on the Court in *Christopher II*; and request discovery pursuant to Rule 56(d). (Dkt. No. 90).[9] Defendants also attach an Affidavit signed by Defendant Kahina listing reasons why Defendants should be entitled to discovery prior to the Court's ruling on the summary judgment motion. (Dkt. No. 90-2). In response, Plaintiffs argue that Defendants continue to relitigate matters that have been previously adjudicated by this Court. (Dkt. No. 91).

---

[8] On November 27, 2018, Plaintiffs filed an Answer to Defendants' Counterclaim. (Dkt. No. 65).

[9] After Defendants filed an Opposition (Dkt. No. 88) to the Renewed Motion for Summary Judgment, the Clerk's Office issued a "Notice of Corrected Docket Entry," prompting Defendants to re-file their Opposition, which then included an Affidavit by Defendant Kahina in support of the request for Rule 56(d) discovery. (Dkt. No. 90). Plaintiffs filed a subsequent Reply to Defendants' re-filed Opposition, which addresses the issues raised in Defendant Kahina's Affidavit. (Dkt. No. 91).

On February 11, 2019, the Court held a hearing to address outstanding matters, including Defendants' compliance with the Court's August 2, 2018 Order granting Plaintiffs' Motion for a Preliminary Injunction (Dkt. No. 37); Plaintiffs' Motion for Summary Judgment (Dkt. No. 33); and Defendants' Response to the Summary Judgment Motion (Dkt. No. 59) requesting time for discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Summary Judgment

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, based on the uncontroverted facts, it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Util. Workers United Ass'n, Loc. 537 v. Util. Workers' Union of Am., AFL-CIO,* 75 F.4th 330, 336 (3d Cir. 2023). Thus, the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In reviewing a summary judgment motion, the district court is required to view all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Curto v. A Country Place Condominium Ass'n., Inc.*, 921 F.3d 405, 409 (3d Cir. 2019) (citations omitted). The role of the court is to "determine whether there is a genuine issue for trial." *Conboy v. United States Small Bus. Admin.,* 992 F.3d 153, 160 (3d Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A genuine issue of material fact exists when the fact-finder, viewing the record evidence, could rationally find in favor of the non-moving party." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52).

If the moving party has met his initial burden, the party opposing summary judgment must offer specific facts contradicting those averred by the movant to establish that a genuine issue of material fact exists. *Savage v. Pennsylvania Turnpike Comm'n*, 15-cv-6501, 2018 WL 2670037, at *14 (E.D. Pa. June 1, 2018) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The non-moving party cannot rely merely upon bare assertions, conclusory allegations, or suspicions to avoid summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

"Courts liberally construe documents filed by *pro se* plaintiffs, and hold the filings to less stringent standards than those drafted by attorneys." *Morisseau v. Borough of N. Arlington*, Civil Action No. 16-8367, 2018 WL 1522731 at *10 (D.N.J. Mar. 28, 2018) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007)). However, when responding to a summary judgment motion, *pro se* parties still are responsible for pointing to competent evidence in the record that is capable of refuting the opposing party's motion. *See Edwards v. Rice-Smith*, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (internal citations omitted). A *pro se* party cannot avoid summary judgment based upon "bald assertions" unaccompanied by evidentiary support. *Whitenight v. Elbel*, No. 16-cv-00646, 2019 WL 6828653, at *2 (W.D. Pa. Dec. 13, 2019); *see also Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (*pro se* plaintiff "has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'").

## III.    DISCUSSION

### A.    Summary Judgment

"In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction

will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *See AAMCO Transmissions, Inc. v. Dunlap*, 646 F. App'x 182, 183 (3d Cir. 2016) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001) (internal citations omitted).[10] "The decision to grant injunctive relief 'lies within the sound discretion of the district court.'" *Walsh v. AMA Staffing Servs. LLC,* Civil No. 22-CV-1786, 2023 WL 4677732, at *6 (D.N.J. July 21, 2023) (internal citations omitted). The plaintiff bears the burden of proving the basis for a permanent injunction. *See In re Achinivu*, 612 B.R. 860, 864 (Bankr. D.N.J. 2020) (citing *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 90 (3d Cir. 1992)).

### 1. Actual Success on the Merits

The Court finds that Plaintiffs have demonstrated actual success on the merits so as to warrant injunctive relief against Defendants. As the Court noted in its Memorandum Opinion granting Plaintiff's Motion for a Preliminary Injunction, the Court has considered and rejected the arguments made by Defendants in the three documents that they filed in the public records—the Affidavit Cover Letter, Affidavit of POA with Security Interest Instruments, and the UCC-1 Financing Statement and Power of Attorney. (Dkt. No. 38 at 18) (citing to the *Christopher I* foreclosure action). Continuing to rehash unabashedly issues from *Christopher I*, Defendants created and filed with the Court some of the same documents to mount a challenge—albeit unsuccessfully—to the Court's entry of judgment. *See Christopher I*, Dkt. Nos. 80-2 ("Certificate of Non-Response/Non-Performance"); Dkt. No. 125 ("Affidavit Verifying the Rights of

---

[10] Although similar, the standard for granting a permanent injunction differs from the standard for entering a preliminary injunction in that a permanent injunction requires a showing of actual success on the merits, while a preliminary injunction requires only a showing of a reasonable probability of success on the merits. *See, e.g.*, *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff, 669 F.3d 374,* 385-86 (3d Cir. 2012); *Kos Pharms., Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir.2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir.1999)).

Defendant"); Dkt. No. 139 ("Affidavit of Facts and Truth in Support of Defendant's Motion for Opposition"). Having received no relief in this Court, Defendants took it upon themselves to file these false and fraudulent documents in the public records, creating the impression that they had valid claims, notwithstanding that their claims had been rejected by this Court.

Moreover, Plaintiffs have also demonstrated that the liens slander the title of Plaintiffs' Foreclosed and Owned Commercial Property. To prove slander of title, a plaintiff must show "(a) falsity of the statement; b) injury to pecuniary interests, such as property, products, or business; c) publication to a third person; d) special harm in the form of actual pecuniary loss; and e) intent, malice, or fault to cause harm." *Harbison v. Auto Depot,* Case No. ST-2016-CV-146, 2017 WL 2267000, at *3 (V.I. Super. May 24, 2017) (citing *Heavy Materials, LLC v. Daniel's Constr. Co.,* No. ST-13-CV-222, 2016 WL 4223995, at *4 (V.I. Super. July 27, 2016) (conducting *Banks* analysis on slander of title); *see also Thompson v. Fla. Wood Treaters, Inc*., 52 V.I. 986, 1006 (D.V.I. 2009), *aff'd*, 405 F. App'x 610 (3d Cir. 2010) (citing *System Operations, Inc. v. Scientific Games Dev. Corp*., 555 F.2d 1131, 1140 (3d Cir. 1977)).

With regard to the first element—falsity of the statement—Plaintiffs have shown that the liens placed on the Foreclosed Property and the Owned Commercial Property are false, as Plaintiffs are not indebted to Defendants as they claim. In particular, the Declaration of FirstBank Vice President John Lewis avers that neither Plaintiff is indebted to Defendants and neither Plaintiff has granted any property liens in favor of Defendants. (Dkt. No. 3-7). Defendants have offered no evidence to challenge these relevant facts. Instead, Defendants themselves have admitted that they filed these liens to retaliate against Plaintiffs because of their disagreement with the outcome of the *Christopher I* foreclosure action, and because of what Defendants viewed as Plaintiffs' association of Defendants with the Sovereign Citizens Movement. (Dkt. No. 82 at Tr. 46:17-Tr.

13

47:2). Therefore, Plaintiffs have demonstrated that Defendants' liens are false, and thus satisfy the first prong of a slander of title claim.

With regard to the second and fourth elements—injury to pecuniary interests and special harm in the form of actual pecuniary loss, respectively—Plaintiffs have met both of these elements. Demonstrating injury to Plaintiff's pecuniary interests, Lewis attests in his Declaration that the liens recorded against the Foreclosed Property and Owned Commercial Property by Defendants constitute a cloud on the title to the properties. (Dkt. No. 3-7 at ¶ 5). In addition, during the hearing, counsel for Plaintiffs explained that the UCC-1 Financing Statement lien, although not recorded with the Recorder of Deeds, would appear during a title search of any of Plaintiffs' real property, and would appear as an exception in any title insurance policy. (Dkt. No. 82 at Tr. 10:16-Tr. 11:11). Therefore, by their unchallenged statements, Plaintiffs have shown that the liens recorded against the property constitute a cloud on the title to the properties, and thus, there has been injury to their pecuniary interest.

Moreover, Plaintiffs have shown that they have suffered actual pecuniary loss by the recordation of the liens. Plaintiffs represent that the lien recorded against the Foreclosed Property interfered with the Bank's obligation to market and dispose of the property to preserve asset value and maintain and improve First Bank's financial condition. (Dkt. No. 87-2 at 9). Lewis states that the liens would cause FirstBank to "necessarily incur additional and unwarranted expense;" expose the Bank to risks of loss; affect the Bank's ability to acquire performing assets; and interfere with the Bank's compliance with banking regulations. *Id.* at ¶ 6. Plaintiffs now aver in their Motion that the liens have indeed resulted in the harm to which Lewis attested. (Dkt. No. 87-9). Because Plaintiffs have shown—and Defendants have not challenged—that the Foreclosed Property's and Commercially Owned Property's vendibility and value are impaired, Plaintiffs have demonstrated

that they have incurred pecuniary harm and actual loss, therefore meeting the second and fourth elements of a slander of title claim.

Next, for the third element—publication—Plaintiffs have shown that each of the liens was recorded, and therefore published, with either the Recorder of Deeds or the Corporations Division. Plaintiff has also submitted the Declaration of Krystal Phillip, who attested that she searched the public records and found that these liens were recorded against the Foreclosed Property and/or the Owned Commercial Property. (Dkt. No. 3-6). Specifically, Ms. Phillips found that the Affidavit Cover Letter was recorded against the Foreclosed Property; an Affidavit of POA was recorded against the Foreclosed Property and the Owned Commercial Property, and a UCC-1 Financing Statement was filed with the Corporations Division. *Id.* at ¶¶ 5b-5d. Ms. Phillips further found that each of the documents bear the signature of "Asarkasaamsu Herishetapaheru," which she recognizes as a signature and name used by Defendant Carl Christopher. *Id*. Defendants have not disputed these facts. Instead, Defendants have admitted that these liens were recorded against the properties. (Dkt. No. 82 at Tr. 29:12-Tr. 29:19).

Lastly, Plaintiffs have also met the fifth element by showing that Defendants acted intentionally and with malice in recording the liens. Because the arguments advanced in the documents were previously rejected by the Court as having no basis in law or fact, Defendants knew at the time of the filing and recording of the liens that they were false and fraudulent; that is, they were not acting in accordance with the Court's earlier rulings. (*Christopher I,* Dkt. Nos. 86, 118, 119, 120, 140, 153, 192). Even more demonstrative of Defendants' intent to file invalid liens was their placement on the documents of the electronic signatures of Plaintiffs' President and Chief Executive Officer and the Executive Vice President and Chief Financial Officer—without their consent. (Dkt. No. 3-4 at 14). Further, at the February 11, 2019 hearing, Defendants appeared to

attribute the filing of the liens to their dissatisfaction with the outcome of *Christopher I* and what Defendants regarded as Plaintiffs' association of Defendants with the Sovereign Citizens Movement.[11]

In view of the foregoing, the Court finds that Defendants filed the liens as a retaliatory act, despite knowing that Plaintiffs were not indebted to them and that they were without the authority to file any such liens. Thus, Plaintiffs have shown that the first factor—actual success on the merits—weighs in favor of granting injunctive relief against Defendants.

### 2. Irreparable Harm

Similar to the arguments made in their Motion for Preliminary Injunction, Plaintiffs argue that the liens have prevented FirstBank from marketing and disposing of the Foreclosed and the Owned Commercial Properties; caused the Bank to incur additional expenses; and exposed the Bank to financial loss. (Dkt. No. 87-2 at 9). Plaintiffs assert that Defendants' threat may reasonably be interpreted to mean that if Defendants are not permanently enjoined, Plaintiffs may file additional "bogus claims" against Plaintiffs' property and the residential properties owned by individuals associated with Plaintiffs. Plaintiffs state that they would have to play a "perpetual game of catch up," amend pleadings and motions, and seek new orders removing invalid liens from the public records. *Id.* at 10.

---

[11] During the February 11, 2019 hearing, Christopher remarked, "We want to stay focused that we're here because wrong was done to us. That's why we're here. If the case went and the attorney did not make those false claims and accusations, or the [B]ank did not make those false claims and accusations and malign ourselves with that movement, we might have just packed our bags and moved about our business … they won fair and square. But to us, there was no fair and squareness in that particular case." (Dkt. No. 82 at Tr. 46:17-Tr. 47:2). Additionally, Christopher said, "We're filing a case against someone who accused us, accused of being something that we're not. That's one of the main reasons. We have other reasons, but that's one of the main reasons. If they didn't do that, then we wouldn't have done what we have done." *Id.* at Tr. 90:22-91:3.

The Court finds that Plaintiffs have suffered irreparable harm as a result of Defendants' filing of false liens. As discussed previously, the false liens constitute a cloud on the title of Plaintiffs' properties and have negatively impacted FirstBank's ability to market and sell the Foreclosed Property, which Plaintiffs have asserted affects their compliance with the applicable regulatory requirements. (Dkt. No. 87-2 at 9). Specifically, in his Declaration, John Lewis attests that under banking regulations, First Bank is required to "prudently and expeditiously market and dispose of Other Real Estate Owned" ("OREO Real Estate"),[12] which includes the Foreclosed Property. (Dkt. No. 3-7 at ¶ 4). However, Lewis attests that he had been advised that the documents filed in the public record "render[s] title to such property uninsurable and thus preclude[s] sale." *Id.* at ¶ 5. Further, during the February 11, 2019 hearing, counsel for Plaintiffs noted that the lien recorded in the Corporations Division would appear visible to a title company seeking to do a search during a transaction to sell, encumber, or insure any of FirstBank's real property. (Dkt. No. 82 at Tr. 10:16-11:11). In turn, the lien would then appear as an exception on a title insurance policy. *Id.* This sole result, due to Defendants' actions, evidence that the injury to Plaintiffs is not "remote or speculative" as it interferes significantly with Plaintiffs' ability to transact business with other entities. Therefore, the harm is imminent, and the remedy is not purely economic in nature so as to be compensable in money. *First Bancorp*, 2018 WL 3715711, at *11 (citing *Morton v. Beyer*, 822 F.2d 364, 372 (3d Cir. 1987). Indeed, courts have found that the act of recording fraudulent and facially frivolous documents constitutes irreparable injury. *United States v. James*,

---

[12] In Lewis' Declaration, he states that "OREO Real Estate" includes "Debts Previously Contracted Real Estate," or "DPC Real Estate." (Dkt. No. 3-7 at ¶ 3). Lewis attests that "DPC Real Estate" is "real estate acquired through any means in full or partial satisfaction of a debt previously contracted." *Id.* Because the Foreclosed Property was acquired through judgment in *Christopher I*, the Foreclosed Property falls into the category of DPC Real Estate, and thus OREO Real Estate. *Id.*

Case No. 14-cv-387, 2015 WL 7351394, at *8 (M.D. Fla. Nov. 20, 2015) (finding that plaintiff had demonstrated irreparable injury because the filing of false liens provided a "presumption of validity" and could preclude the defendants' "ability to engage in financial transactions"); *United States v. Agra*, No. 13-cv-1662, 2014 WL 1671592, at *5 (E.D. Cal. Apr. 28, 2014) (finding that the government had suffered irreparable harm where false liens had a potential negative impact on the employees' credit histories) ; *United States v. McGugan*, 600 F. Supp. 2d 608, 614-15 (D.N.J. 2014) (citing to a number of cases enjoining taxpayers from filing frivolous and unsupported documents against IRS employees).

As requested in their Motion for Preliminary Injunction, Plaintiffs ask that Defendants be enjoined from filing or recording documents against their property as well as against the property of "person[s] associated with Plaintiffs." (Dkt. No. 87 at 2).  Plaintiffs argue that Defendants have threatened to record false documents against "the residential properties of other potential defendants." (Dkt. No. 87-2) (citing, *Christopher II,* Dkt. No. 1-2, page 16 of 19, ¶ 8).  Indeed, Plaintiffs have shown a threat of actual harm sufficient to warrant a permanent injunction. *See DISH Network L.L.C. v. Jones*, No. CIV.A. 12-1273, 2012 WL 2885933, at *3 (E.D. Pa. July 16, 2012) (*citing McLendon v. Continental Can Co*., 908 F.2d 1171, 1182 (3d Cir.1990) ("A party may not obtain a permanent injunction upon a showing of potential harm, but rather must show that an actual threat of harm exists."). However, Plaintiff has not shown that the threat includes *all* persons associated with Plaintiffs, just that Defendants have threatened to file liens on the residences of other defendants. Considering that Defendants placed the electronic signatures of Plaintiffs' President and Chief Executive Officer and the Executive Vice President and Chief Financial Officer on one of the false liens without their consent, the Court will tailor the injunction to apply to Plaintiffs' officers, employees, and agents. *See N.A.A.C.P. v. City of Philadelphia*, No.

CIV.A. 11-6533, 2014 WL 7272410, at *1 (E.D. Pa. Dec. 19, 2014), *aff'd sub nom. Nat'l Ass'n for Advancement of Colored People v. City of Philadelphia*, 834 F.3d 435 (3d Cir. 2016) (citing *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974)) ("Injunctions, which carry possible contempt penalties for their violation [,] must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law.").

In view of the foregoing, the Court concludes that—except as to the unnamed "person[s] associated with Plaintiffs" (Dkt. No. 87 at 2)—Plaintiffs have shown that they would suffer irreparable harm in the absence of an injunction.

### 3. Remaining Factors

As it relates to the last two factors—harm to the nonmoving party and the public interest—the Court finds that granting a permanent injunction will not result in greater harm to Defendants, and the public interest weighs in favor of granting an injunction. As the Court found in granting preliminary injunctive relief, Defendants will not face injury if an injunction is imposed because one cannot claim to be injured if enjoined from filing frivolous and false liens against another's properties.

Further, the Court finds that the public interest is served by preventing the filing of false liens which have no basis in fact or law and only serve to disrupt the integrity of the public recording system. In addition, it is in the public interest for institutions, such as Plaintiffs', to be able to transact business in compliance with regulatory obligations and not deal with the sort of interference created by Defendants' recordation of false liens. Therefore, the last two remaining factors weigh in favor of injunctive relief.

Because Plaintiffs have established each of the factors required for injunctive relief, the Court will grant a permanent injunction in favor of Plaintiff, permanently enjoining Defendants from filing false liens and encumbrances against Plaintiffs' properties.

### 4. Rule 56(d) Discovery

Defendants' arguments regarding Rule 56(d) discovery do not mount a successful challenge against summary judgment. It is well established that "a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Shelton v. Bledsoe*, 775 F.3d 554, 565, 568 (3d Cir. 2015) (internal quotation marks omitted). However, "a party seeking further discovery in response to a summary judgment [motion] must submit an affidavit specifying for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Hargrave v. Ramsey*, 688 F. App'x 124, 127 (3d Cir. 2017) (citing *Pennsylvania, Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2017). However, Defendants' Declarations only relate back to issues regarding the validity of the Judgment in *Christopher I*; claims of libel as raised in *Christopher I and II*; and Plaintiffs' alleged failure to respond to the RESPA Request, also raised in *Christopher II*. These issues have already been adjudicated by the Court, and not appealed. Defendants are therefore collaterally estopped from raising these issues again here. *Ingram v. Lupas,* 353 F. App'x 674, 676 (3d Cir.2009 ("The doctrine of collateral estoppel generally precludes a party from re-litigating issues or claims that have already been adjudicated."); *Burlington N. R.R. v. Hyundai Merchant Marine Co*., 63 F.3d 1227, 1231–32 (3d Cir. 1995) (alterations in original) (quoting *In re Graham*, 973 F.3d 1089, 1097 (3d Cir. 1992)) (collateral estoppel applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was]

essential to the prior judgment.").  These same issues cannot therefore serve as grounds for seeking discovery or creating genuine issues of material fact regarding the validity of the liens placed on Plaintiffs' properties. There simply is no basis in law or fact for the liens that Defendants have placed on Plaintiffs' property.  Because Defendants' Declarations do not even purport to explain— and the Court cannot fathom—what kind of discovery would preclude summary judgment under the circumstances here, the Court will deny Defendants' request for Rule 56(d) discovery.

>    **B**.    **Defendants' Counterclaims**

Plaintiffs seek the dismissal of Defendants' counterclaims, arguing that such claims are barred by the doctrine of collateral estoppel because those claims have already been litigated in *Christopher II*.

In their Answer-Counterclaim to Plaintiffs' Complaint, Defendants simply rehash arguments made in *Christopher II* including Defendants' claimed right to a jury trial as opposed to summary judgment in *Christopher I*; broad assertions that Plaintiffs used forged documents to obtain the judgment in *Christopher I*; claims that FirstBank violated the provisions of RESPA by failing to adequately respond to their Qualified Written Request for information regarding Defendants' loan; and claims that Plaintiffs made defamatory and libelous claims against Defendants in obtaining a judgment in *Christopher I* and in filing its Motion for Preliminary Injunction, with reference to Defendants being associated with the Sovereign Citizens Movement. (Dkt. No. 59).

The Court has addressed—and rejected—Defendants' arguments in *Christopher I* and more recently in *Christopher II*. *See, e.g.*, *Asarkasaamsu v. FirstBank, et al.*, Civil Action No. 2016-0057, 2020 WL 7232318, at *6 (D.V.I. Dec. 7, 2020) (addressing RESPA, defamation/libel claims, and "void judgment" claims in *Christopher I*).  Therefore, Defendants' claims are barred

by the doctrine of collateral estoppel because these same issues were raised and litigated in *Christopher I and II*, and were essential parts of the Court's rulings against Defendants on summary judgment.

With regard to Defendants' claims of defamation and libel stemming from Plaintiffs' filing of the Motion for Preliminary Injunction, Defendants allege that Plaintiffs have "malign[ed] the names and reputations of [Defendants] with the Sovereign Citizens watch internet website." (Dkt. No. 57-1 at ¶ 39). Plaintiffs especially take issue with the copies of a Fact Sheet by the Treasury Inspector General for Tax Administration in part defining the Sovereign Citizen Movement, and a "Quick Guide to Sovereign Citizens" attached to Plaintiffs' Motion for Preliminary Injunction. Because these were submissions made in the instant judicial proceedings, the statements contained within these documents are privileged and cannot serve as a basis for a claim of defamation. *See Christopher II*, 2020 WL 7232318, at *11-12 (finding that because statements were made during judicial proceeding and addressed claims, they were "absolutely privileged" and could not serve as a claim for defamation); *see also Guardian Ins. Co. v. Estate of Knight-David*, 2017 WL 2814039, at * 2 (V.I. Super. April 7, 2017) (absolute immunity applied to allegations in a civil complaint filed with the court).

Because Defendants' counterclaims are either precluded by collateral estoppel or the doctrine of absolute privilege, the Court will dismiss Defendants' counterclaims with prejudice.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Plaintiffs First Bancorp and FirstBank Puerto Rico's "Renewed Motion for Summary Judgment" (Dkt. No. 87) and deny as moot Plaintiffs' initially filed "Motion for Summary Judgment" (Dkt. No. 33). The Court will also deny Defendants Carl F. Christopher a/k/a Asarkasaamsu RR. II K. Herishetapaheru and Chenzira D. Kahina's

request for Rule 56(d) discovery (Dkt. No. 59) and dismiss their Counterclaims (Dkt. No. 57) with prejudice.

The Court declares that Plaintiffs are not indebted to Defendants in any amount in connection with any proceedings previously held before this Court, and that the following real property is not subject to any lien in favor of Defendants in connection with any such proceedings:

> Plot No. 176-C of United 21 Subdivision of The Whim Estates, West End Quarter, St. Croix, U.S. Virgin Islands, consisting of 1.077 U.S. acres, more or less, as more fully shown on PWD No. 594 dated June 5, 1957;

> Plot No. 4 of Parcel 3 of Estate Orange Grove, Company Quarter, St. Croix, U.S. Virgin Islands, consisting of approximately 1.836 U.S. Acres, as more fully shown and described on OLG Drawing No. 991 dated December 1, 1960;

> Parcel Nos. 12 and 13 of King Street, Christiansted, St. Croix, U.S. Virgin Islands, as more fully shown and described on OLG Drawing No. 1167 dated February 10, 1962; and

> Parcel No. 14, Christiansted Town, St. Croix, U.S. Virgin Islands.

The Court also declares that the following documents filed in the official records of the U.S. Virgin Islands Recorder of Deeds and in the records of the Office of Corporations in the Office of the Lieutenant Governor, Government of the Virgin Islands, and in any other place where they may appear are ***VOID AB INITIO*** and have no legal force or effect as they relate to any proceedings previously held before this Court:

1. Affidavit Cover Letter, recorded on or about, April 21, 2016 with the Recorder of Deeds, Office of the Lieutenant Governor, Government of the Virgin Islands, Document No. 2016001306;

2. Affidavit of POA with Security Interest Instruments, recorded on or about May 3, 2016 with the Recorder of Deeds, Office of the Lieutenant Governor, Government of the Virgin Islands, Document No. 2016001454; and

3. "Uniform Commercial Code-1 Financing Statement," recorded on or about May 3, 2016 with the Records of the Office of Corporations, Office of the Lieutenant Governor, Government of the Virgin Islands, Document No. 20160000286G.

The Court will grant the following permanent injunctive relief against Defendants in connection with any proceedings previously held before this Court:

1. Defendants shall be **PERMANENTLY ENJOINED** from filing or recording, or attempting to file or record, any liens, encumbrances, claims, or other documents, of any description, in the public records of the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof, which purport to create or constitute a debt or lien or encumbrance against any property, including personal property, of Plaintiffs First Bancorp and FirstBank, their subsidiaries, and any of Plaintiffs' officers, employees, and agents.

2. Defendants shall be **PERMANENTLY ENJOINED** from filing or recording, or attempting to file or record, any liens, encumbrances, claims, or other documents or instruments, of any description, in the public records of the United States, the Territory of the Virgin Islands, or of any State or Territory, or of any political subdivision thereof, that bear any connection whatsoever to the foreclosure proceeding in Case No. 1:13-cv-0093 or the Mixed Action Claim in Case No. 1:16-cv-0057, or any proceedings previously held before this Court and that purport to create or constitute a debt or lien or encumbrance against any property, including personal property, of Plaintiffs First Bancorp and FirstBank, their subsidiaries, and any of Plaintiffs' officers, employees, and agents.

3. Any currently existing liens, encumbrances, claims, or other documents of the nature described above that are prohibited herein shall be invalid and void *ab initio*.

4. Any violation of this injunction will be considered contempt of this Court.

An appropriate Order accompanies this Memorandum Opinion.

Date:   September 30, 2024

_____/s/_____
WILMA A. LEWIS
District Judge